UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MARK FORSYTH and )
KIMMERLY LINDSAY )
 )
v. ) NO. 2:11-CV-191
 )
BANK OF AMERICA, N.A. and )
TRINITY INSPECTION SERVICES, LLC )

# MEMORANDUM OPINION
# REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DOCS. 39 AND 42

*PLAINTIFF'S COMPLAINT*

In 2008, plaintiffs owned unimproved real property in Butler, Tennessee, upon which they wished to build a house. They applied for a residential construction loan to the Bank of America ("Bank") for a residential construction loan to finance the construction of their house. A loan to the plaintiffs in the amount of $347,000.00 was approved. A promissory note, deed of trust, and a residential construction loan agreement were executed. The loan proceeds were to be paid out in periodic "draws" as particular stages or phases of the construction project were completed. In this regard, the Bank hired Trinity Inspection Services, LLC ("Trinity") to periodically inspect the construction project to determine when another draw of loan proceeds was appropriate.

Plaintiffs hired Masters Touch Custom Homes, Inc. ("Builder") to build their house. The Builder did a deplorable job, and the plaintiffs fired the Builder in November 2009. At

that time, based upon Trinity's reports, the Bank had approved and disbursed approximately $177, 410.00 of the loan proceeds to the Builder.

The construction was so shoddy that an engineer retained by the plaintiffs advised them that the house would have to be demolished entirely and construction started anew.

The plaintiffs filed suit against the Bank and Trinity on various causes of action, all of which generally can be summed up as follows: that the Bank and Trinity were obligated to plaintiffs to inspect and essentially certify to them the quality of the Builder's work on their house.

### *THE RULE 12(B)(6) MOTIONS TO DISMISS*

Plaintiffs asserted eight separate causes of action in their complaint: (1) breach of contract (against the Bank); (2) breach of the implied covenant of good faith and fair dealing (against the Bank); (3) fraud, promissory fraud, or negligent misrepresentation (against the Bank and Trinity); (4) violation of the Tennessee Consumer Protection Act (against the Bank); (5) violation of the Tennessee Consumer Protection Act (against Trinity); (6) defective construction (against the Bank); (7) negligence and or gross negligence (against Trinity); and (8) injunctive relief (against the Bank).

While this case was pending before the district judge, both the Bank and Trinity filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure regarding some of the asserted causes of action.

The district judge dismissed the fourth cause of action (against the Bank) and the fifth cause of action (against Trinity), on the basis that the statute of limitations in the Tennessee

2

Consumer Protection Act had run before the plaintiffs filed their suit. He also dismissed the sixth cause of action (against the Bank) because it was duplicative of the first cause of action asserted by the plaintiffs.

The district judge also dismissed plaintiffs' claim against Trinity for fraud or promissory fraud in count three, leaving only the claim for negligent misrepresentation (against Trinity) in that count.

In the plaintiffs' eighth cause of action, they asked the court to enjoin the Bank from instituting foreclosure proceedings against their property, claiming that they were then current on their mortgage payments and that a foreclosure would harm their credit rating and otherwise do irreparable harm to them. In paragraph 55 of the Amended Complaint, plaintiffs noted that the Carter Court Circuit Court, before the case was removed, had granted a Temporary Restraining Order against the Bank that prohibited it from instituting foreclosure proceedings. The plaintiffs "requested that this Court also grant such injunctive relief and enter a similar Temporary or Continuing Restraining Order, pending the outcome of this case on the merits."

As far as this magistrate judge can ascertain, the plaintiffs never followed up on their request for a temporary restraining order after the case was before this court; certainly, no temporary restraining order was granted. The case has been pending here for well over two years. Lacking any movement on this issue from the plaintiffs, the court presumes that the claim for injunctive relief is moot, and therefore will be addressed no further. In any event, plaintiffs asked only that the restraining order persist until "the outcome of this case on the

3

merits." As will be seen, this memorandum opinion will be dispositive of the plaintiffs' suit.

Therefore, there remain pending only the following causes of action:

(a) As to the Bank, Count One (breach of contract), Count Two (breach of implied covenant of good faith, etc.), and Count Three (fraud, promissory fraud, or negligent misrepresentation);

(b) As to Trinity, Count Three (negligent misrepresentation only), and Count Seven (negligence or gross negligence).

## *THE MOTIONS FOR SUMMARY JUDGMENT*

Both the Bank and Trinity have filed motions for summary judgment. The Bank filed its motion, (Doc. 39), on August 1, 2013. It also filed a supporting brief and a statement of material fact as required by the Scheduling Order. Likewise, Trinity filed its motion for summary judgment on August 1, 2013, (Doc. 42), accompanied by a brief which included a statement of material fact.

Under Rule 7.1(a) of the Local Rules of the Eastern District of Tennessee, a party has twenty-one days to respond to a dispositive motion. Under Rule 6(d) of the Federal Rules of Civil Procedure, an additional three days must be added. Thus, plaintiffs had a total of twenty-four days to respond to the motions for summary judgment.

As of today, September 16, 2013, forty-six days have elapsed and no response has been filed to either motion. The court therefore presumes that plaintiffs concede that the two statements of material fact filed by the defendants are correct and that they do not dispute them, F.R.Civ.P. 56(c)(1). The court will consider the motions for summary judgment in

4

light of that presumption.

Additionally, the Bank's counsel points out in its brief that the plaintiffs did not pursue any discovery in this case.

*STANDARD OF REVIEW*

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-

5

moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id*. A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

***THE BANK'S MOTION FOR SUMMARY JUDGMENT (DOC. 39)***

The facts, which the plaintiffs concede are material and undisputed, are as follows:

On October 10, 2008, the plaintiff Mark Forsyth and the Bank entered into a Loan Agreement which memorialized the rights and obligations of the parties concerning a construction loan in the amount of $347,000.00 to be used for the construction of a house on property owned by the plaintiffs in Butler, Tennessee.

Masters Touch Custom Homes, Inc. was to build the house.

6

Pursuant to the Loan Agreement, advances would be made to the Builder for the "value of the work completed and approved by [the Bank] measured by the proportion that the work done bears to the work to be done using the contract price." The plaintiffs and the Builder's President approved a draw schedule for disbursements on the loan and authorized disbursements to be sent directly to the Builder.

Construction commenced in October 2008, and the Bank made disbursements in accordance with the draw schedule until the last disbursement was made on September 29, 2009.

As part of the draw process, the Bank hired Trinity to perform construction progress inspections on the home before disbursements were made. The goal of these inspections was to insure that disbursements were being paid out only for work that had been completed. These inspections were not for the purpose of determining the quality of the construction work or consistency with plans, specifications, or governmental requirements.

In total, the Bank disbursed $186,710.00 under the Loan Agreement.

Plaintiffs were displeased with the progress that the Builder was making on the home, and on November 3, 2009, they fired the Builder.

After firing the Builder, plaintiffs hired an engineer who inspected the construction and who concluded that the home would have to be razed and rebuilt because the construction was not completed in a workmanlike manner, and the materials used in the construction were not in compliance with the plans and specifications.

The plaintiffs obtained a judgment against Jesse Heinz, President of the

7

Builder, to compensate them for Builder's failures.

*BREACH OF CONTRACT CLAIM*:

The Loan Agreement executed by the Bank and the plaintiffs unequivocally provided that the Bank had "the right, but not the obligation, to inspect the Property and Residence from time to time . . . by such inspector or inspectors as may be appointed by [the Bank]." The Loan Agreement further provided "[t]hat neither Borrower, Contractor, nor any person having an interest in the Property or Residence shall have a right to rely on Lender's inspections, . . ., such inspection reports and procedures being for the sole benefit of Lender." Similarly, in this same vein: "[the bank] is not liable for the performance of [Builder] or any other parties or for any failure to construct, complete, protect, or insure the Residents of Property."

Not only does this provision in the Loan Agreement not place any contractual obligation upon the Bank to monitor construction *on behalf of the plaintiffs* to insure its quality and the use of specified materials, it unequivocally provides, in multiple places, that there was no such obligation. Obviously recognizing that the Loan Agreement makes it clear that the Bank has no responsibility or liability for the Builder's default notwithstanding the Bank's right to make inspections, the plaintiffs alleged in their complaint that this exculpatory language was "void." Unless these provisions are to be declared to be against public policy, there is no legitimate basis on which they can be declared void, or ignored by a court. Therefore, the Bank was under no contractual obligation to the plaintiffs to monitor the quality of the construction work or the materials used by the Builder.

8

Neither is there any statute or case known to this magistrate judge that places such an obligation upon a lending bank absent a contractual provision.

The Bank's only contractual duty was to disburse the loan proceeds to the Builder according to the terms of the draw schedule and in proportion to the value of the work completed. Based upon the undisputed facts, this the Bank did.

The fact that Trinity was not licensed under the Tennessee Home Inspector License Act, Tenn. Code Ann. § 62-8-301, *et. seq.,* and that the Bank hired Trinity to perform the periodic inspections, is irrelevant for two reasons. First, Trinity was not subject to the provisions of the Act, as discussed later in this memorandum. Second, the Loan Agreement makes it quite clear that since the plaintiffs had no right to rely upon Trinity's inspections regarding the quality of the Builder's work, Trinity's lack of a license is irrelevant.

Even if Trinity was negligent as plaintiffs allege, the undisputed facts in the record show that Trinity was not the Bank's agent, but rather was an independent contractor. One cannot be vicariously liable for the action of an independent contractor, unless there is a contract whereby the party voluntarily assumes liability on behalf of the independent contractor. *See, e.g., Howell v. Metro. Govt. of Nashville, et al.*, 1991 WL 66432 (Tenn. App. 1991).

There is no fact which supports the plaintiffs' allegations in Count One that the Bank breached its contract with them.

*CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING:*

9

The implied covenant of good faith and fair dealing applies to the *performance and enforcement* of an existing contract; *see, e.g., Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 661 (Tenn. 2013). The implied covenant, however, "does not . . . create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement," *Barnes & Robinson Co., Inc. v. OneSource Facility Services, Inc.*, 195 S.W.3d 637, 643 (Tenn. App. 2006).

As discussed in the preceding section, the agreement between the Bank and the plaintiffs makes it abundantly clear that Trinity's inspections were solely for the Bank's benefit, and that the plaintiffs had no right to rely upon them for any reason. The implied covenant of good faith and fair dealing cannot be used to eviscerate these unambiguous contractual provisions.

*CLAIM FOR FRAUD/PROMISSORY FRAUD/NEGLIGENT MISREPRESEN-TATION:*

Fraud consists of (1) an intentional misrepresentation of a past or existing material fact; (2) made with the knowledge that the representation was false; and (3) upon which the injured party reasonably relied. *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. App. 1992).

The elements of promissory fraud are the same except that it involves a promise of some future action with the present intent not to fulfill the promise, *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 567 (6th Cir. 2003).

The elements of the tort of negligent misrepresentation are: (1) the communication of false information by a person who has a pecuniary interest in a business transaction; (2) the person failed to use reasonable care in obtaining or communicating that information; (3) it is communicated to another party for that party's use in that business transaction; and (4) the other party justifiably relies upon the false information to his pecuniary detriment. *Haynes v. Cumberland Builders*, 546 S.W.2d 228 (Tenn. App. 1976).

In this count, plaintiffs make three discrete allegations which they claim constitute fraud, or promissory fraud, or negligent misrepresentation:

(a) the Bank failed to disclose to them that Trinity was unlicensed, that construction was not proceeding as required, and that the Bank misrepresented these facts by "omission," i.e., by failing to affirmatively apprise plaintiffs of these facts;

(b) the Bank threatened foreclosure when it had no reasonable belief that it was authorized to do so; and

(c) the Bank "required" the inclusion of void exculpatory clauses in the parties' Loan Agreement.

Trinity's lack of a license under the Tennessee Home Inspectors License Act is irrelevant, as already noted.

The undisputed fact is that the Bank threatened to accelerate the loan, which it had a contractual right to do; it never threatened foreclosure.

Presumably "exculpatory clauses" are meant to refer to the various provisions in the Loan Agreement which recite that the plaintiffs had no right to rely upon Trinity's

11

inspection reports. "Exculpatory clauses" are the usual stuff of contracts, and in some form probably are in 95% of all contracts. Unless a given exculpatory clause is void as being against the public policy of the state, a court may not ignore them. Again, this court can fathom no reason why these provisions would be against the public policy of the State of Tennessee.

There is no fact before the court from which it could be reasonably inferred that the Bank knowingly or negligently communicated any false information to the plaintiffs, nor is there any fact that supports plaintiffs' allegations that the Bank made any promises to these plaintiffs which it had no intention of fulfilling.

### *TRINITY'S MOTION FOR SUMMARY JUDGMENT (DOC. 42)*

The claims remaining viable against Trinity are (1) negligent misrepresentation, and (2) negligence or gross negligence.

#### *NEGLIGENT MISREPRESENTATION*

Plaintiffs allege that Trinity negligently misrepresented facts "by providing false inspection reports and Builder Information to the Bank," as well as other undescribed material facts "to be proved at trial."

For the tort of negligent misrepresentation to arise, the information communicated to the plaintiffs must have been false, *Haynes, supra*.

The contract entered into between the Bank and Trinity required Trinity to perform services for the Bank that applied generally to any loan, and not just to the loan of these plaintiffs. That contract obligated Trinity to perform periodic inspection reports of a

12

borrower's construction project to confirm that construction had proceeded to a stage that the Bank should pay out a certain percentage of the loan proceeds to the borrowers' builder. That contract also provided that Trinity's services to the Bank "shall not include reviewing the construction project to determine quality, consistency with plans, specifications, or governmental requirements or matters related to changes to the scope of the construction project." *See*, Doc. 42-2, Schedule A. This language is completely consistent with the language in the Loan Agreement between the Bank and the plaintiffs which provided that the plaintiffs had no right to rely upon Trinity's inspection reports.

When these plaintiffs were confronted with Trinity's motion for summary judgment, they could not choose to stand upon their pleadings. Rather, they were required to show that there is a genuine issue of material fact which, if resolved favorably to them, would entitle them to judgment, Rule 56(c)(1). The only evidence before the court is that Trinity did what it was contractually obligated to do – apprise the Bank with regard to the percentage of completion of the plaintiffs' house at various times in order to enable the Bank to make a like percentage distribution of the loan proceeds. Trinity was not obligated to express any opinions regarding the quality of the Builder's work. The uncontradicted evidenced reflects that the information communicated to the Bank was true, from which it follows that plaintiffs' claim based on negligent misrepresentation must fail.

*NEGLIGENCE, GROSS NEGLIGENCE*

Negligence, whether ordinary or gross, requires the breach of some duty owed to the injured party by the alleged tortfeasor. As the district judge discussed in his order

13

regarding Trinity's Rule 12(b)(6) motion, Trinity undoubtedly owed a duty to the Bank, but not to the plaintiffs *unless* Trinity's lack of a license under the Tennessee Home Inspector License Act, Tenn. Code Ann. § 62-8-301, *et. seq.,* created such a duty.

Tenn. Code Ann. § 62-6-304 provides that it is unlawful for any person to engage in the business of home inspection, without first obtaining a license.

"Home inspection" is defined as "a visual analysis for the purpose of providing a professional opinion of the condition of a residential building," Tenn. Code Ann. § 62-6-302(3)(A). In subsection (3)(B), it is provided that "home inspection" does *not* mean "an inspection or assessment by a lender, either as a part of an evaluation of value or for purposes of determining whether or not to extend credit, provided that the inspection or assessment shall not be represented as a 'home inspection report'" Tenn. Code Ann. § 62-6-302(3)(B).

Trinity's reports were only for the Bank's use in determining whether a partial distribution of the loan proceeds was required under the Loan Agreement. Further, those reports were denominated "Draw Inspection Reports," not Home Inspection Reports. Therefore, Trinity's reports fell within the exclusion of Tenn. Code Ann. § 62-6-302(3)(B).

The Tennessee Home Inspector License Act of 2005 did not apply to Trinity, as a result of which that Act created no duty on Trinity's part to the plaintiffs.

## *CONCLUSION*

The motion for summary judgment filed by the defendant, Bank of America, N.A., (Doc. 39) is GRANTED.

The motion for summary judgment filed by the defendant, Trinity Inspection Services,

14

LLC, (Doc. 42), is GRANTED.

SO ORDERED:

<pre>
                          s/ Dennis H. Inman
                     United States Magistrate Judge
</pre>